NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0184n.06

No. 09-5526

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

**FILED**
**Mar 23, 2010**
LEONARD GREEN, Clerk

MICHELLE ROSS,

    Plaintiff-Appellant,

v.

PFIZER, INC.

    Defendant-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
WESTERN DISTRICT OF
TENNESSEE

_____/

BEFORE:    MARTIN, ROGERS, and McKEAGUE, Circuit Judges.

    BOYCE F. MARTIN, JR., Circuit Judge.  Michelle Ross, an African-American former employee in Pfizer Inc.'s Corporate Accounting and Analysis Department in Memphis, Tennessee, sued Pfizer for racial discrimination when it promoted a Caucasian employee to a supervisory position instead of Ross.  She also claimed constructive discharge, essentially alleging that Pfizer's failure to promote her and the resulting workplace environment left her no choice but to leave her job for a new, comparably paying job.  Finally, she sought compensation for emotional distress.  The district court granted summary judgment for Pfizer on all claims, and Ross appeals.  We **AFFIRM**.

**I.**

    Ross began working in Pfizer's Corporate Accounting and Analysis Department as a staff

accountant in 2000, and she was promoted to senior staff accountant in 2005. The Department was responsible for compiling financial and accounting information for Pfizer and forwarding it to the New York office, which handled all public SEC filings. The Department itself was not responsible for any public filings.

The Department was comprised of four divisions; Ross worked in the employee benefits accounting division. Each division had its own supervisor, and each supervisor managed a team of staff and senior staff accountants. At some point in 2005, Monica Morgan became the manager of the entire Department. Thus, the chain of command as of 2005 was that Ross, a senior staff accountant, reported to the supervisor of the benefits division, who in turn reported to Morgan.

In May 2006, one of the supervisors was promoted, so Pfizer posted an advertisement for the open supervisor position. The posting for the position listed as preferred qualifications, among other things, "three-plus years of big 4 public accounting (audit)" experience and "previous supervisory experience." Morgan was responsible for drafting the job posting. She testified that she thought that "big 4 firm" experience, meaning work in the audit division of PricewaterhouseCoopers, Deloitte Touche Tohmatsu, Ernst & Young, or KPMG, was important because it gave an individual exposure to the overall balance sheet of large public companies like Pfizer and because a broad exposure to balance sheet accounting would be useful background for the person filling the open supervisor position.

Ross submitted her resume for the position. She had prior supervisory experience as she had been an interim supervisor for a period of months. However, she did not have experience with a big 4 accounting firm. Ross was chosen for an initial interview, along with four other candidates. At

least one of the other candidates, Angela French, was an African-American female with big 4 accounting experience, though hers was not audit experience.

The initial interviews were conducted by Morgan and three of the division supervisors. Ross asserts that at some point during the interview, Morgan said "two people would go on to the second round, and that she was not going to let this monkey be on her back." Ross asserts that she took the "monkey" reference to be directed at her as an African-American, derived from the "porch monkey" racial slur. Morgan, however, testified that she was using "monkey" in the sense of the common phrase "get this monkey off my back" in reference to a difficult project that she and Ross were working on, signifying that she was putting that project aside to focus on Ross's interview.

After the first round of interviews, the three supervisors provided Morgan with their recommendations on which two candidates should make it to the next round. Based on this input and her own opinions, Morgan selected two Caucasian women with prior big 4 audit experience to go on to the next round. Morgan eventually chose Amy Shackleford for the supervisor position.

Ross was informed that she did not make it to the second round of interviews on May 25, 2006. That same day, Ross contacted headhunters to begin searching for a new job. Soon after, Morgan became aware that Ross was disappointed at not having been selected. She met with Ross several times to give feedback on the interview and to discuss how Ross could position herself for the next open position, including giving Ross more leadership opportunities. Pfizer's Human Resource Director, Dan Brown, also met with Ross. They discussed ways for Ross to get more exposure to auditing and other developmental opportunities, including attending leadership conferences at Pfizer's expense.

Nevertheless, Ross left Pfizer in July 2006 to take a position at a comparable salary with another large company. In May of 2007, she filed suit alleging claims under Title VII and 42 U.S.C. § 1981 for failure to promote due to racial discrimination, as well as a claim of constructive discharge. During discovery, a dispute arose regarding Ross's request for documents and information regarding Pfizer's promotion of one of the supervisors to a position in the New York office. A central aspect of Ross's attack on Pfizer's decision not to promote her is the big 4 public audit experience preference, which she claims was unnecessary for a supervisor in the Memphis-based Department and was thus a pretext for a decision not to promote based on her race. Apparently, Pfizer had in 2008 promoted one of the Memphis supervisors, a Caucasian male without public accounting experience, to the New York office, which does engage in public filings and reporting. She claimed that information regarding this promotion was relevant to show that the preference for big 4 accounting experience for a supervisor position in Memphis was unreasonable if Pfizer did not consider such experience necessary for promotion to a position that actually handled public reporting. Pfizer objected to this line of discovery, and the magistrate judge denied Ross's motion to compel production of this evidence. The district court affirmed the magistrate judge's decision.

The court eventually granted summary judgment to Pfizer on all claims, finding that Ross had failed to present sufficient evidence to create a question of fact as to whether Pfizer's proffered reason for not promoting Ross was a pretext and that Ross had not established evidence to support her claim for constructive discharge. Ross timely appealed.

**II.**

On appeal, Ross takes issue with the court's grant of summary judgment on her failure to promote and constructive discharge claims, as well as with the discovery ruling. We review the district court's summary judgment decision de novo. *Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco, Inc.*, 477 F.3d 854, 861 (6th Cir. 2007). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The "mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## III.

Both Title VII and section 1981 prohibit intentional discrimination in the workplace on the basis of race, 42 U.S.C. § 2000e-2(a)(1) (Title VII); *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004) (section 1981), and both are analyzed under the same framework. *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001). To show employment discrimination, the plaintiff must present either direct evidence of discrimination or circumstantial evidence that would allow an inference of discriminatory intent. *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 514 (6th Cir. 2003).

Direct evidence "is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Direct evidence "proves the existence of a fact without requiring any inference." *Grizzell v. City of Columbus*, 461 F.3d 711,

719 (6th Cir. 2006).

A case relying on circumstantial evidence, however, is analyzed under the familiar *McDonnell-Douglas* three-step, burden-shifting framework. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). For purposes of appeal, Pfizer assumes that Ross has established a prima facie case of racial discrimination. And Ross does not dispute that Pfizer has met its burden of proffering a legitimate, nondiscriminatory explanation for its decision not to promote her. Thus, the parties agree that the burden is on Ross to show that Pfizer's explanation is a pretext for intentional discrimination.

Plaintiffs establish pretext by showing "that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008). "[T]o survive summary judgment a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale," so, once the employer has proffered a non-discriminatory explanation for its action, the plaintiff "d[oes] not need to produce additional evidence to support a finding of pretext; the evidence that he produce[s] in support of his prima facie case may, but will not necessarily, suffice to show a genuine issue of material fact concerning pretext." *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 532, 533 (6th Cir. 2007). If, as in this case, the plaintiff seeks to compare her qualifications to those of the person chosen for the position, relative qualifications may establish a triable issue of fact as to pretext if the evidence shows that either (1) the plaintiff's qualifications "were so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter

applicant over the former," or (2) the plaintiff was "as qualified as or better qualified than the successful applicant" and the record also contains "other probative evidence of discrimination." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 626-27 (6th Cir. 2006).

## A.      Direct Evidence of Discrimination

Ross contends that the "monkey" reference is direct evidence of racial discrimination, arguing that "monkey" is a commonly known racial epithet referring to African Americans. Pfizer counters that Morgan used the word "monkey" as part of the common phrase "monkey on your back" or "get this monkey off my back." The district court agreed with Pfizer, finding that "monkey" was not direct evidence of discrimination.

Other courts have held that the word "monkey," when used in the context of the monkey-on-the-back idiom, is not direct evidence of racial discrimination. *Gregory v. Widnall*, 153 F.3d 1071, 1074-75 (9th Cir. 1998); *Bell v. Waste Mgmt., Inc.*, No 03-cv-992, 2004 U.S. Dist. LEXIS 21864, at \*17 n.2 (D. Del. Oct. 29, 2004). We agree—though it is possible that someone referring to a monkey on her back could be doing so with racial animus, the monkey-on-the-back idiom is commonly used in everyday conversation in situations without racial undertones. As "monkey" in this context is subject to two different interpretations, it does not necessarily "require the conclusion" that the speaker is making a racial slur. *Jacklyn*, 176 F.3d at 926. Thus, it is not direct evidence of racial discrimination.

However, we acknowledge that the word "monkey" can have a racial connotation and thus, when combined with other evidence, could lead one to conclude that the speaker was motivated by racial animus. As Ross points out, the facts surrounding Morgan's explanation of her usage of the

term could cast doubt on the sincerity of her explanation. She first denied having ever made the statement when confronted by Dan Brown, the Human Resources Director. Then, in Pfizer's position statement to the EEOC, Brown wrote that Morgan's statement alluded to the interview process. But, in her deposition, Morgan claims that she made the statement in regard to a work project completely unrelated to the interviews. A juror could see these contradictory explanations as evidence that Morgan and Pfizer were less than honest about the true reason for her statement. Thus, use of the word "monkey" could add some weight as indirect evidence of discrimination.

**B.     Has Ross Created a Question of Fact as to Whether Pfizer's Explanation for its Action is Pretext?**

Because Ross has not shown direct evidence of discrimination, she must show circumstantial evidence sufficient to create a question of fact as to whether Pfizer's proffered explanation for its decision not to promote her is a pretext for a discriminatory motive. Pfizer's explanation was that the candidate selected for the position, Shackleford, had the prior supervisory experience and the big 4 audit experience that the job posting had indicated were preferred, whereas Ross did not have the big 4 experience. As stated above, Ross may show that this explanation is a pretext by showing "that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White*, 533 F.3d at 393. Ross contends that she can prove pretext under any of the three prongs, but this is not the case. It is undisputed that Shackleford had big 4 experience and that Ross did not, so Pfizer's proffered explanation has basis in fact. Similarly, Ross has not presented any evidence that her lack of big 4 audit experience "was not the actual reason" for her failure to get the promotion—she has

found no emails or other evidence that would contradict Pfizer's assertion of the reason for its decision.

Thus, Ross must rely on the third avenue of showing pretext, that the proffered explanation is insufficient to explain the employer's actions. The main thrust of her argument is that Pfizer's desire for a candidate with big 4 audit experience was not a reasonable preference for the open supervisor position. She maintains that, because the Department did not engage in public filing or reporting, big 4 public auditing experience was not relevant to the supervisor position and, thus, Pfizer's decision to promote Shackleford was not a "reasonable business judgment." She seizes on the statement in *White* that:

> In determining whether the plaintiff has produced enough evidence to cast doubt upon the employer's explanation for its decision, we cannot . . . unquestionably accept the employer's own self-serving claim that the decision resulted from an exercise of "reasonable business judgment." . . . Nor can we decide "as a matter of law" that "an employer's proffered justification is reasonable." . . . The question of whether the employer's judgment was reasonable or was instead motivated by improper considerations is for the *jury* to consider. Our role is merely to assess whether the plaintiff has presented enough evidence for a reasonable jury to accept the plaintiff's claim that the employer made an unlawful business decision.

*Id.* at 393 n.6 (emphasis in original).

Ross would have us read this statement as a categorical rule that, whenever a plaintiff challenges the reasoning behind an employer's decision, the jury must determine whether the employer's decision was reasonable. However, such a reading would eliminate the gatekeeping function of summary judgment that allows claims to go to the jury only if a reasonable jury could find for the plaintiff based on the evidence in the record. Furthermore, Ross takes the statement in *White* out of context. The *White* majority was responding to the dissent's argument that courts

should apply what would be essentially a categorical "business judgment rule" that would prevent courts from looking behind an employer's stated hiring preferences to determine if it is a pretext. In its footnote six, the majority rejected the dissent's argument by showing that the reasonableness of the employer's reasoning is a jury question if there are conflicting facts. However, the rule remains that a "plaintiff may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision '*to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation*.'" *Id.* at 393 (emphasis added) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) (en banc)). Thus, a plaintiff may attack the reasonableness of an employer's qualification preferences only insofar as an unreasonable business justification could be a sign of pretext for illegal discrimination. *See id.* ("The reasonableness of the employer's reasons may of course be probative of whether they are pretexts. The more idiosyncratic or questionable the employer's reason, the easier it will be to expose as a pretext, if indeed it is one.") (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1012 n.6 (1st Cir. 1979)).

When viewed in the correct light, Ross's attack on the reasoning behind Morgan's preference for someone with big 4 accounting experience is unpersuasive, both as a matter of logic and as a matter of evidence in the record. Ross has produced nothing more than her own argument that the desire for big 4 audit experience is an unreasonable criterion for the promotion. Pfizer is a publicly traded, Fortune 500 company, and the Corporate Accounting and Analysis Department is responsible for preparing the building blocks with which the New York office prepares the company's public filings. We do not find it at all "idiosyncratic" that Morgan would want someone with exposure to

that process as one of her lieutenants.[1]  To say otherwise would be to create a rule that an employer may not prefer highly qualified applicants and, instead, must accept anyone who possesses the bare-minimum qualifications for the job.  We are aware of no such rule, nor would it be the place of the courts to fashion one.  Accordingly, Ross has produced no evidence by which a reasonable juror could find that the stated preference for someone with big 4 audit experience is so utterly unreasonable that it is evidence of pretext.

Once Ross's attack on the preference for big 4 experience fails, she has little else with which to attack Pfizer's failure to promote her.  If Morgan was reasonable in preferring candidates with big 4 audit experience, and Shackleford had that experience whereas Ross did not, then it is difficult to see how Ross could show pretext.  All she is left with is the argument that she was nevertheless more qualified for the position than Shackleford.  However, our comparison of the two candidates' respective qualifications, in conjunction with the rest of the record, convinces us that no reasonable jury could find that Ross's qualifications "were so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Bender*, 455 F.3d at 627-28.  And even if reasonable minds could differ over whether Ross was "as

---

[1]It is on this point that Ross brings her challenge to the district court's discovery ruling. As stated above, she argues that if big 4 experience was irrelevant to a position in the New York office, it was certainly not relevant to a position in the Memphis office.  She thus sought information regarding the New York job.  Her argument ignores the difference in decision-makers.  It is undisputed that Morgan was solely responsible for drafting the job posting in Memphis, which included the preference for big 4 experience, and for the ultimate decision on who to promote.  However, Morgan had nothing to do with advertising or filling the New York position.  Thus, the circumstances of the New York position have nothing to do with the relevant question here, which is whether Morgan, acting on behalf of Pfizer, unlawfully discriminated against Ross due to her race.  The district court's denial of Ross's motion to compel this information was well within its discretion.

qualified as or better qualified than" Shackleford, there is not sufficient "other probative evidence of discrimination" in the record from which a reasonable jury could conclude that Morgan's decision was animated by Ross's race. We therefore affirm the district court's entry of summary judgment for Pfizer on the employment discrimination claims.

## C. Constructive Discharge Claim

Ross claims that her experience during her interview, including the "monkey" comment, and her work environment following the interview left her no choice but to leave Pfizer. Specifically, she contends that, after she was not chosen for a second interview, Morgan and others began to "ostracize" her, stopped communicating with her, began to exclude her from meetings, and were generally short with her. She claims that this treatment was so unbearable that she felt compelled to leave. She brought a constructive discharge claim, but the district court found insufficient evidence to support the claim and thus granted summary judgment for Pfizer.

> As we stated in *Smith v. Henderson*, 376 F.3d 529 (6th Cir. 2004),
>
> A constructive discharge requires a determination that "'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" [*Held v. Gulf Oil* Co., 684 F.2d 427, 432 (6th Cir. 1982)] (quoting *Bourque v. Powell Elec. Mfg.*, 617 F.2d 61, 65 (5th Cir. 1980)). *See also Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002) (conditions supporting a constructive discharge "must be objectively intolerable to a reasonable person") (citations omitted).

*Id.* at 533-34. In determining whether a work environment rises to the level of compelling an employee to leave, this Court has adopted the following inquiry:

> Whether a reasonable person would feel compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4)

reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001) (quoting *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)).

Ross contends that her working environment was such that no reasonable person would have stayed. But, the facts point the other way. Ross admitted in her deposition that both Morgan and Brown met with her after the promotion decision had been made to discuss her continued employment with Pfizer and ways to position her better for future promotions. Thus, it cannot be said that there was any overt or covert intent on the part of Pfizer to force Ross out. Moreover, Ross began searching for a new job the day that she learned that she had not been selected for a second interview. If she was planning to leave on the day that she found out about not being selected for a second interview, the state of the workplace environment after that date could not be what compelled her to leave. Accordingly, we affirm the entry of summary judgment for Pfizer on the constructive discharge claim, as well as her demand for damages arising from emotional distress.

## IV.

For the reasons set forth above, we **AFFIRM**.