[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11786
Non-Argument Calendar
_____

D.C. Docket No. 7:13-cv-01708-SGC


TONY L. MITCHELL,

Plaintiff-Appellant,

versus

MERCEDES-BENZ U.S. INTERNATIONAL, INC.,
TW FITTING NA, LLC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(December 17, 2015)

Before WILLIAM PRYOR, JORDAN, and JILL A. PRYOR, Circuit Judges.

PER CURIAM:

Tony L. Mitchell appeals the district court's grant of summary judgment in favor of his former employers, Mercedes-Benz U.S. International, Inc. and TW Fitting, NA, LLC, on his retaliation claims, brought pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* Mr. Mitchell argues the district court erred when it held that he failed to provide sufficient evidence of a causal connection to establish a *prima facie* case of retaliation.

## I

Mr. Mitchell, who is African American, began his employment with Mercedes-Benz U.S. International, Inc. ("MBUSI") on September 2, 1997. On October 14, 2003, he was promoted from team member (also called an "operator") to team leader. In 2008, MBUSI investigated alleged wrongdoings by Mr. Mitchell and concluded that he violated company policy by falsifying time sheets and leaving work early, thus receiving pay he was not entitled to. Mr. Mitchell was issued a last chance letter and demoted to team member. On April 28, 2008, Mr. Mitchell was terminated for failure to report to work in violation of MBUSI's attendance policy.

On April 4, 2008, Mr. Mitchell filed a charge with the Equal Employment Opportunity Commission against MBUSI, alleging race discrimination and retaliation. In February of 2009, based in part on his EEOC charge, he filed a

federal lawsuit against MBUSI.  On August 10, 2010, based on the parties' joint stipulation, the lawsuit was dismissed with prejudice.

In 2012, Mr. Mitchell applied for several jobs.  According to Mr. Mitchell, four businesses gave him conditional offers of employment which were rescinded after MBUSI gave Mr. Mitchell a negative reference.  In September of 2012, Mr. Mitchell filed another EEOC charge against MBUSI, alleging that MBUSI made these negative references to his prospective employers in retaliation for his 2008 EEOC charge and for his 2009 lawsuit.

On May 6, 2013, Mr. Mitchell started working for TW Fitting, NA, LLC ("TWF") as a production manager.  TWF supplies tires and rims to MBUSI.  Craig Human, TWF's plant manager, was involved in the decision to hire Mr. Mitchell.

On June 28, 2013, Mr. Mitchell requested that he be permitted to use the company credit card to buy supplies at Lowe's or Wal-Mart in preparation for a plant shutdown.[1]  This request was approved and signed by Mr. Human.  While out purchasing the supplies, Mr. Mitchell made an unauthorized charge to the credit card, in the amount of $29.36, to buy lunch for himself and two employees.  Mr. Mitchell turned in the receipt for this purchase.

---

[1] TWF's policy and procedure regarding use of the company credit card require that: (1) the employee complete a charge request form, listing the purposes for use of the card; (2) the request form be approved and signed by Mr. Human; (3) the employee sign out the credit card and use it for the authorized purpose; and (4) the employee return the credit card, sign it back in, and turn in all receipts for purchases made.  Failure to follow this policy can subject the employee to discipline, including immediate termination from employment.

On July 8, 2013, TWF terminated Mr. Mitchell.  Mr. Human told Mr. Mitchell that he was being terminated for his unauthorized use of the company credit card to make personal purchases.  Mr. Mitchell's termination document states that the use of the card constituted fraud, which was grounds for dismissal. Before being terminated, Mr. Mitchell had not received formal discipline for any reason during his two months of employment at TWF.

A few days prior to his discharge, Mr. Mitchell saw two MBUSI employees (his former coworkers) — Mike Capps and Rocky Harrelson — visiting the TWF plant.  It is a normal practice of MBUSI to visit a supplier when the supplier is behind in its production or experiencing "downtime" in its production lines. During their visit, Mr. Mitchell spoke with Mr. Capps, who asked how Mr. Mitchell's lawsuit against MBUSI was going, and Mr. Mitchell replied that it had settled and was done.  During this conversation, Mr. Mitchell did not discuss the basis of his prior lawsuit with Mr. Capps.  While the two MBUSI employees were at the TWF plant, they spent time speaking privately with Mr. Human in his office.

In his complaint, Mr. Mitchell alleged the following: (1) TWF terminated his employment based on race discrimination, in violation of § 1981 (Count I); (2) TWF terminated his employment at the request of MBUSI after MBUSI informed TWF of his 2008 EEOC charges and 2009 lawsuit, in violation of § 1981 (Count

4

II);[2] (3) MBUSI retaliated against him for bringing the 2008 EEOC charges and 2009 lawsuit by providing negative employment references to potential employers and also by pressuring TWF to terminate his employment, in violation of Title VII (Count III) and § 1981 (Count IV); and (4) MBUSI intentionally interfered with his contractual and business relationship with prospective employers and TWF (Count V).    Mr. Mitchell's appeal challenges the district court's grant of summary judgment only with respect to his claim against TWF for retaliatory discharge (Count II), and his claims against MBUSI for providing negative employment references (Counts III and IV).

## II

We review a district court's grant or denial of a motion for summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party.  *See Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).  "Summary judgment is authorized when all pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Stewart v. Booker T. Washington Ins.*,

---

[2] In 2013, Mr. Mitchell filed additional EEOC charges against MBUSI, as well as TWF, relating to his termination from TWF.  But he never amended his complaint upon receiving notice of his right to sue.

5

232 F.3d 844, 848 (11th Cir. 2000) (internal quotation marks and citation omitted). *See also* FED. R. CIV. P. 56(a).

To establish a *prima facie* case for retaliation under Title VII or § 1981, a plaintiff must show that (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse employment action; and (3) there is a causal connection between his participation in the protected activity and the adverse employment action. *See Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

With respect to the causal connection prong, "the plaintiff must prove that the protected activity and the adverse action are not completely unrelated. Although we interpret the causal link requirement broadly, . . . merely showing that the alleged adverse action occurred sometime after the protected expression does not establish the causation element — for temporal progression to be enough, the events must be in very close proximity." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 978 n.52 (11th Cir. 2008) (alteration added; internal quotation marks and citations omitted). A three-to-four-month period between the protected activity and the adverse employment action does not rise to the level of "very close" temporal proximity. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citations omitted). "[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected

6

expression and the adverse action, the complaint of retaliation fails as a matter of law." *Id.* (alteration added; citation omitted).

In addition, to satisfy the causal link prong, "[a]t a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993) (alteration added; citations omitted). Awareness may be established by circumstantial evidence, but "our cases have required plaintiffs to show a defendant's awareness with more evidence than mere curious timing coupled with speculative theories." *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) (citation omitted).

Once the plaintiff has established a *prima facie* case of retaliation, the employer has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action. *See Bagby Elevator Co., Inc.*, 513 F.3d at 1277. "The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct." *Id.* (citation omitted).

### III

The district court granted TWF's motion for summary judgment as to the retaliatory discharge claim because Mr. Mitchell did not set forth sufficient evidence showing anyone at TWF was aware of his protected activity — his 2008

7

EEOC charge and his 2009 lawsuit against MBUSI — and therefore he failed to establish a *prima facie* case of retaliation.  On appeal, Mr. Mitchell argues "there was enough in the way of circumstantial evidence to suggest" Mr. Human knew of his history of complaints and litigation against MBUSI.  We disagree, finding summary judgment was appropriately granted for TWF on this basis.

Mr. Mitchell relies on the following circumstantial evidence to demonstrate TWF's awareness and to satisfy the causal connection element: (1) the fact that, during the MBUSI employees' visit to the TWF plant, Mr. Capps asked Mr. Mitchell how his lawsuit against MBUSI was progressing; (2) the MBUSI employees were in Mr. Human's office "for extended periods;" and (3) approximately ten days after the MBUSI employees' visit, TWF terminated him.

Although it is conceivable that Mr. Capps knew of Mr. Mitchell's 2008 EEOC charge and 2009 lawsuit against MBUSI and that, during his TWF visit, told Mr. Human about the same, "'could have told' is not the same as 'did tell,'" and "it would be pure speculation to infer" that Mr. Capps actually told Mr. Human about Mr. Mitchell's protected activity.  *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1355 (11th Cir. 1999).  Furthermore, the fact that Mr. Capps and Mr. Harrelson were seen speaking with Mr. Human in his office is also "not surprising" given that TWF was experiencing downtime — which, Mr. Mitchell testified, meant MBUSI could run short on its tire supply and experience downtime

8

of its own.  *Id.*  "[N]or is it enough to support a reasonable inference that they discussed a specific topic, much less an inference concerning what they said about it."  *Id.* (alteration added).

Mr. Mitchell's speculative version of events is further unavailing in light of the uncontroverted evidence which shows that: neither Mr. Capps nor Mr. Harrelson were involved in any issues leading to Mr. Mitchell's discharge from MBUSI; Mr. Harrelson did not know Mr. Mitchell filed an EEOC charge or lawsuit against MBUSI; Mr. Capps and Mr. Harrelson did not discuss Mr. Mitchell's employment with anyone at TWF; and although Mr. Capps generally knew of Mr. Mitchell's lawsuit against MBUSI, he did not know the nature of the lawsuit and did not know of the EEOC charge, nor did he and Mr. Mitchell discuss any such details during Mr. Capps' visit to the TWF plant.  Furthermore, the evidence shows that Mr. Human had no knowledge of the 2008 EEOC charge or the 2009 lawsuit against MBUSI at the time of Mr. Mitchell's termination, and "[a] decision maker cannot have been motivated to retaliate by something unknown to

him." *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (alteration added).[3]

In sum, the circumstantial evidence is insufficient for any reasonable jury to find Mr. Human, or anyone at TWF, was aware of Mr. Mitchell's protected activity when Mr. Mitchell's employment was terminated.  As previously noted, reliance on "mere curious timing coupled with speculative theories" is not sufficient to impute knowledge and establish a *prima facie* case of retaliation.  *Raney*, 120 F.3d at 1197–98 (citation omitted).  *See also Brungart*, 231 F.3d at 799 ("[T]emporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct.") (alteration added). "Summary judgment cannot be avoided, . . . based on hunches unsupported with significant probative evidence." *Raney*, 120 F.3d at 1198 (alterations added).  We therefore affirm the district court's grant of summary judgment for TWF as to Mr. Mitchell's retaliation claim.

---

[3] Mr. Mitchell's unsupported assertion that Mr. Human is being "untruthful," and his argument that the testimony of Mr. Capps and Mr. Harrelson should be "discredited because as interested witnesses they have motive to shape their testimony to suit their employer's purposes," are inadequate and fail to create a genuine issue of material fact.  *See Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("One who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial" (internal quotation marks, brackets, and citation omitted)).  *See also* FED. R. CIV. P. 56(e).

## IV

Mr. Mitchell alleges that MBUSI, in retaliation for his 2008 EEOC charge and 2009 lawsuit, provided four prospective employers with a negative reference, which caused them to rescind their conditional employment offers. The district court ruled that "a negative employment reference, even if providing only true information, can qualify as an adverse employment action . . . ." Nonetheless, it found that Mr. Mitchell's retaliation claim failed as to one prospective employer, Brose, because Mr. Mitchell provided "no basis for the court to determine [MBUSI] provided a negative reference to Brose, much less the contents of or intent behind any such reference," and thus the alleged reference was not actionable. As to the other three prospective employers, the district court found that Mr. Mitchell failed to establish that the MBUSI employees who allegedly provided the negative references had any knowledge of the protected activity, and thus Mr. Mitchell failed to establish a causal connection. Based on our review of Mr. Mitchell's claims concerning each of these prospective employers, we agree with the district court.

In August of 2012, Mr. Mitchell applied for a position with one such prospective employer, Faurecia, through Cornerstone Recruitment Group. After the interview, a Faurecia employee emailed Archie Craft, the former Vice-President of Administration at MBUSI, for information on Mr. Mitchell. Mr. Craft

11

responded via an email stating: "This individual used to be a Team Leader for us [sic] he has a file three inches deep and is not eligible for rehire."  Mr. Craft submitted an unrebutted sworn declaration stating that, in 2012, he did not know that Mr. Mitchell had filed an EEOC charge or lawsuit against MBUSI, and that he did not have any involvement in these matters.  Although Mr. Mitchell argues that Mr. Craft's disavowal of knowledge of his protected activity "strains credulity," he offers no evidence to rebut Mr. Craft's assertions and concedes he has no personal knowledge to the contrary.  Similarly, Mr. Mitchell presents no evidence in opposition to the sworn declaration of another MBUSI employee, Donna Merrill, that she did not, and does not, know Mr. Mitchell and, importantly, had no awareness of his 2008 EEOC charge or his 2009 lawsuit against MBUSI when she provided another prospective employer, Altec, with information regarding Mr. Mitchell's job title, dates of employment, and a general explanation that MBUSI does not consider a team leader position to be a supervisory position.[4]

With regard to another prospective employer, Brose, there is no evidence that any adverse employment action even took place.  Although a Brose hiring official told him she was going to call MBUSI for a reference check, and Mr.

---

[4] The position Mr. Mitchell applied for at Altec required three years of supervisory experience. Mr. Mitchell represented to Altec that his position as team leader at MBUSI, plus filling in as an assistant supervisor when needed, satisfied this requirement.  Although Mr. Mitchell concedes that the team leader position at MBUSI is not a supervisory position, he argues Ms. Merrill falsely stated that he was an operator (which was his last job title at MBUSI after being demoted), and made it appear that he lied on his resume.

Mitchell subsequently received a letter informing him that he would not be offered a job, Mr. Mitchell admits he does not know if the representative actually contacted MBUSI and does not know what, if anything, Brose knew about his protected conduct when it decided not to hire him. Notably, in its third-party subpoena response, Brose affirmed that it did not speak to any third parties (including former employers) about Mr. Mitchell, and, furthermore, that it was not aware of the EEOC charge and lawsuit until it received the subpoena to which it was providing a response.

There is also a lack of evidence of what, if any, negative reference took place regarding Mr. Mitchell's employment application with Nissan. Although one of the Nissan interviewers expressed a desire to get in touch with Mr. Mitchell's former manager (who had been transferred to China), Mr. Mitchell admits he has no knowledge of whether Nissan actually contacted his former manager or any other MBUSI employee, let alone what might have been said or what awareness such employee might have had regarding his EEOC charge and lawsuit.

Finally, in December of 2012, Mr. Mitchell had Terri Johnson, a friend for whom he had done some work, call MBUSI and request a reference to "confirm his suspicion that Mercedes was providing negative references about him." Ms. Johnson is alleged to have spoken with a human resources official named Barbara

13

who told her Mr. Mitchell was not eligible for rehire, that he had gotten into some trouble, and that he was not a reliable worker.  In her sworn declaration, Ms. Merrill states that there was no one named "Barbara" working in human resources at the time Ms. Johnson made this call.  Even assuming, without deciding, that this phone call from a person who had no intention of hiring Mr. Mitchell is actionable, and drawing all factual inferences in favor of Mr. Mitchell, there is still no indication "Barbara" was actually aware of Mr. Mitchell's EEOC charge and lawsuit.

Mr. Mitchell's "where there's smoke there's fire" argument is unpersuasive on this record and wholly inadequate in light of the critical shortcomings in the causation element of his retaliation claims.  Because we conclude that Mr. Mitchell failed to establish a *prima facie* case for retaliation, and that the district court did not err in granting MBUSI's and TWF's respective motions for summary judgment, we do not advance to the next step of addressing any legitimate,

14

nonretaliatory reasons for the challenged employment actions, or the question of pretext.[5]

**V**

In sum, we affirm the district court's grant of summary judgment in favor of MBUSI and TWF.

**AFFIRMED.**

---

[5] On appeal, Mr. Mitchell argues that MBUSI's general counsel was aware of his protected activity and this knowledge should be imputed to the company generally. Mr. Mitchell failed to raise this argument in district court, which alone is a sufficient ground for denial. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.") (internal quotation marks omitted; citing cases). In any event, "the fact that the employer is a corporation does not relieve a plaintiff of the burden of showing a causal connection between the protected conduct and the decision to take the adverse employment action." *Brungart*, 231 F.3d at 800 (rejecting argument that even if the decision maker did not have knowledge of the protected conduct, knowledge should be imputed to the corporation where other corporate officials or supervisors had knowledge of it).