

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00084-CV

———————————————

CITY OF HALTOM CITY, TEXAS, Appellant

V.

NICKOLAS FORREST, Appellee

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-304403-18

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Appellant City of Haltom City appeals the denial of its motion for summary judgment and its plea to the jurisdiction, in which it sought the dismissal of appellee Nickolas Forrest's claims for retaliation and breach of a settlement agreement. We affirm.

## I. BACKGROUND[1]

In 2015, Haltom City Police Department hired Forrest. While Forrest was employed there, officers and supervisors began mocking his religion—Forrest is a member of The Church of Jesus Christ of Latter-Day Saints, commonly referred to as Mormon—and he reported the problem to higherups. Shortly thereafter, Haltom City PD assigned an internal affairs officer to investigate Forrest for misconduct—namely, lying to a superior officer about whether he collected a damage estimate from a witness at the scene of a traffic collision. The investigator concluded that the allegations of misconduct were unfounded.[2] There was evidence that, contrary to

---

[1]Viewed in the light most favorable to Forrest, the record shows the following.

[2]In his report, the investigator recited Forrest's account of the incident: that he simply misunderstood the question asked by his superior officer, Corporal Ronald Foreman, and that he admitted his mistake shortly thereafter, as soon as the true nature of the question dawned on him. The investigator also reported the sentiments of two other officers who were at the scene of the accident, who stated that it would have been "pointless" for Forrest to lie about something so trivial, that the superior officer could have just as easily taken Forrest aside to counsel him about the incident rather than arrange an internal affairs investigation, and that the superior officer "kind of []baited him into" misstating the facts and "giving . . . the answer [Foreman] want[ed]." Finally, the investigator related his own view that while the situation was

2

regulations, Haltom City PD's chief of police pressured the investigator to change his findings and deem the allegations "sustained," but the investigator refused. Nonetheless, Forrest was terminated on the basis of the alleged misconduct. Haltom City PD initially listed his discharge as dishonorable, but Forrest challenged that determination, and an administrative law judge overturned the determination and ordered that Forrest's discharge be listed as honorable.

Forrest filed a religious discrimination complaint with the Texas Workforce Commission. The parties entered a settlement in which Haltom City agreed to pay Forrest nearly $30,000. Haltom City further agreed that whenever it received an employment inquiry regarding Forrest, it would process the inquiry through Haltom City PD's human resources department, which was to provide only neutral, nondisparaging information regarding title, salary, and dates of employment.

Forrest then applied for a position with Round Rock Police Department. As he progressed through the interview process, he disclosed that Haltom City PD had fired him for alleged misconduct, though Forrest said he had successfully challenged the allegations in a lawsuit. He signed a written form that would allow Haltom City PD to provide Round Rock PD with files concerning his work record.

Round Rock PD contacted Haltom City PD for an employment reference. Instead of processing the inquiry through the human resources department, the call

ambiguous, he believed Forrest's account, both because there was evidence that Forrest had been honest about similar issues in the past and because "I don't see a purpose in this situation for Officer Forrest to deceive Cpl. Foreman."

3

was routed to Sergeant Eric Peters. According to Forrest's deposition testimony, Peters provided false information about Forrest: that he had been investigated twice (rather than once) and that as a result, he had been fired for confirmed misconduct (rather than that the allegations had been deemed unfounded).

Sergeant Peters recalled events differently, though he admitted that he had two conversations with Round Rock PD, both on September 6, 2017. He stated that in the first conversation, Round Rock PD conveyed its understanding that the misconduct allegations against Forrest were "not sustained." As Peters admitted, he said that that understanding "was not accurate as far as what I had in my files."[3] Round Rock PD then forwarded him a copy of the authorization. In the second conversation the same day, Peters stated that he wanted to contact Haltom City's attorney to see whether he could forward the investigation file to Round Rock PD.

Round Rock PD's internal documents show that the next day, on September 7, it removed Forrest from consideration, citing the September 6 conversations with Peters.

Subsequently, Haltom City's attorney contacted Forrest's attorney and asked how he wanted them to respond to the request for the investigation file. On September 11, 2017, Forrest's attorney authorized Haltom City PD to produce the file, but he instructed Haltom City PD not to discuss Forrest's employment. Though

---

[3]Peters testified, however, that he did not actually look at the internal affairs file until after his conversation with Round Rock PD.

Peters was cleared to send the file, Round Rock PD never followed up to request it, having already removed Forrest from consideration.

Forrest filed suit against Haltom City, alleging that Haltom City PD provided a disparaging job reference. Forrest alleged that in doing so, the City (1) retaliated against him and (2) breached the terms of its prior settlement agreement. The City filed a plea to the jurisdiction and hybrid traditional and no-evidence motion for summary judgment, both of which the trial court denied based on the evidence above. Haltom City brought this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(5), (8).

## II.    STANDARD OF REVIEW

### A.    Summary Judgment

We review a trial court's denial of summary judgment de novo. *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019). To prevail on a traditional summary-judgment motion, a movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Id.* A defendant may obtain summary judgment by, among other things, conclusively negating at least one element of the plaintiff's cause of action. *Murphy Expl. & Prod. Co.-USA v. Adams*, 560 S.W.3d 105, 108 (Tex. 2018). It is also proper for the trial court to grant a defendant's no-evidence motion for

5

summary judgment if the plaintiff has produced no more than a scintilla of evidence on an essential element of the cause of action, that is, if the plaintiff's evidence does not rise to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Dall. Morning News*, 554 S.W.3d at 625. Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *KMS Retail*, 593 S.W.3d at 181.

## B. Plea to the Jurisdiction

Governmental immunity generally protects state subdivisions from suit unless the immunity has been waived by the constitution or state law. *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019). We review a ruling on a plea to the jurisdiction de novo. *Id.* The Texas Commission on Human Rights Act (TCHRA) waives immunity when the plaintiff states a claim for conduct that violates the statute. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018).

"Immunity from suit may be asserted through a plea to the jurisdiction or other procedural vehicle, such as a motion for summary judgment." *Id.* A jurisdictional plea may challenge the pleadings, the existence of jurisdictional facts, or both. *Id.* When a jurisdictional plea challenges the pleadings, we determine if the plaintiff has alleged facts affirmatively demonstrating subject matter jurisdiction. *Id.* If the plea challenges the existence of jurisdictional facts, we consider evidence when necessary

6

to resolve the jurisdictional issues, even if the evidence implicates both subject matter jurisdiction and the merits of a claim. *Id.* at 770–71.

When, as here, the jurisdictional plea challenges the existence of jurisdictional facts with supporting evidence, the standard of review mirrors that of a traditional summary judgment: "If the plaintiffs' factual allegations are challenged with supporting evidence necessary to consideration of the plea to the jurisdiction, to avoid dismissal plaintiffs must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction." *Id.* at 771 (cleaned up) (quoting *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 221 (Tex. 2004)). In determining whether a material fact issue exists, we take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor. *Id.* We disregard evidence and inferences unfavorable to the plaintiff unless reasonable jurors could not. *Id.*

## III.   RETALIATION

### A.   General Applicable Law

Under Section 21.055 of the TCHRA, an employer commits an unlawful employment practice if the employer retaliates or discriminates against a person who has engaged in protected activity. Tex. Labor Code Ann. § 21.055. "Because smoking guns are hard to come by, the three-part *McDonnell Douglas* burden-shifting framework enables an employee to establish discrimination with circumstantial evidence." *Clark*, 544 S.W.3d at 782 (footnote omitted) (citing, *inter alia*, *McDonnell Douglas Corp. v. Green*,

7

411 U.S. 792, 802–05, 93 S. Ct. 1817, 1824–26 (1973)). If the employee establishes a prima facie case of discrimination, a rebuttable presumption of discrimination arises. *Id.* The employer can defeat this presumption by producing evidence of a legitimate, nondiscriminatory reason for the disputed employment action. *Id.* Once rebutted, the employee may prove a statutory violation with evidence that the employer's stated reason is false and a pretext for discrimination. *Id.*

This burden-shifting framework also applies to retaliation claims. *Id.* To establish a prima facie case of retaliation, an employee must show: (1) he engaged in an activity protected by the TCHRA, (2) he experienced a material adverse employment action, and (3) a causal link exists between the protected activity and the adverse action. *Id.* If jurisdictional evidence rebuts the prima facie case, there must be evidence of pretext and causation in order for the plaintiff to survive the jurisdictional plea and summary judgment. *Id.* at 783. When reviewing an issue under the TCHRA, we may also look to cases interpreting analogous federal provisions found in Title VII of the Civil Rights Act of 1964. *Herbert v. City of Forest Hill*, 189 S.W.3d 369, 374–75 (Tex. App.—Fort Worth 2006, no pet.).

**B.     Adverse Employment Action**

Haltom City does not dispute that Forrest engaged in protected activity when he filed a charge of discrimination. However, in its first issue, Haltom City maintains that Forrest failed to create a fact issue on whether there was a materially adverse employment action, both because of Forrest's lack of evidence and because the record

conclusively shows otherwise. To the contrary, we conclude that Forrest created a fact issue on whether Sergeant Peters's negative employment reference constituted adverse employment action.

The TCHRA protects employees from retaliatory employment actions that are materially adverse. *Clark*, 544 S.W.3d at 788. Materially adverse means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006)). The challenged action must be materially adverse because it is important to separate significant harms from the petty slights or minor annoyances that all workers experience. *Id.*; *Niu v. Revcor Molded Prods. Co.*, 206 S.W.3d 723, 731 (Tex. App.—Fort Worth 2006, no pet.). "This objective standard is fact specific because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Metro. Transit Auth. of Harris Cty. v. Douglas*, 544 S.W.3d 486, 494 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (cleaned up).

Under both Texas and federal law, a false or negative employment reference may constitute adverse employment action. Under Texas law, an employer's actions might be considered adverse if it would materially affect the party's ability to obtain outside employment, and that is potentially true of a false or negative employment reference. *See Montgomery Cty. v. Park*, 246 S.W.3d 610, 615 (Tex. 2007) (concluding, in a related context, that an employer's action was not materially adverse under the

9

*Burlington* standard because it did not "generally preclude[] him from obtaining outside employment," among other reasons); *Douglas*, 544 S.W.3d at 494 (suggesting that courts consider "the effect the act had on the employee's ability to obtain outside employment" in determining whether there is adverse action).

Likewise, under parallel federal law, it is well established that a false or negative employment reference may qualify as an adverse employment action. "Several courts have held that a former employee . . . can state a valid Title VII retaliation claim based on being given negative references after engaging in protected activity." *Rascon v. Austin Indep. Sch. Dist.*, No. A-05-CA-1072 LY, 2007 WL 1390605, at *8 (W.D. Tex. May 8, 2007); *see Matthews v. Wisc. Energy Corp.*, 534 F.3d 547, 558 (7th Cir. 2008); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 178–79 (2d Cir. 2005); *Hillig v. Rumsfeld*, 381 F.3d 1028, 1033–34 (10th Cir. 2004); *Hashimoto v. Dalton*, 118 F.3d 671, 674 (9th Cir. 1997) ("There is little question that the dissemination of adverse employment references can constitute a violation of Title VII if motivated by discriminatory intent."); *Smith v. Sec'y of Navy*, 659 F.2d 1113, 1121 (D.C. Cir. 1981); *see also E.E.O.C. v. L.B. Foster Co.*, 123 F.3d 746, 754 (3d Cir. 1997).

For instance, in *Rascon*, an assistant principal for the Austin Independent School District (AISD) alleged that the principal harassed her and, when she filed a grievance to complain of discrimination, retaliated against her. 2007 WL 1390605, at *1. To resolve the dispute, the assistant principal agreed to resign her position in exchange for AISD's agreement that it "would ensure that all requests for references

10

from any of [the assistant principal's] prospective employers would be directed to one of two AISD employees (neither of which were [the principal])." *Id.* But months later, when AISD received a request for a reference from another school district, the school district inexplicably directed the call to the principal "in what would appear to be a plain breach of the settlement agreement." *Id.* The principal gave a terse and negative reference that, in the assistant principal's subsequent suit, she argued was retaliation. *Id.* at *5–6. When AISD moved for summary judgment, the magistrate agreed that there was a fact issue on adverse employment action:

> The issue is whether a hypothetical reasonable employee, if she found out that retaliation in the form of negative employment references were being used as a stick to keep employees from exercising their rights under Title VII, would be dissuaded from filing a charge of discrimination. It is an unremarkable proposition to state that they would. Employment references are often the key to obtaining a job, and a negative reference can guarantee that a prospective employee does not obtain a position. Clearly, knowing that one would receive a negative reference for complaining about discrimination could dissuade a person from making the charge in the first instance.

*Id.* at *8. We agree with *Rascon*, the facts and analysis of which are squarely on point with regard to Forrest's claim that Sergeant Peters retaliated and violated a settlement agreement by providing an employment reference that, though brief, was undoubtedly negative.

But Haltom City argues that there can be no adverse action because Sergeant Peters's negative reference was not the reason that Round Rock PD decided not to hire Forrest and because the negative reference relayed only true information.

11

Haltom City's argument rests on two premises: (1) that to be a materially adverse, a negative employment reference must be provably traced to the loss of an outside job opportunity; and (2) that if the content of a job reference is true, then it cannot constitute an adverse employment action. And according to Haltom City, the record evidence conclusively establishes that both premises apply here, because Round Rock PD's decision to remove Forrest from consideration was based solely on information that Forrest himself provided, and because Sergeant Peters provided only accurate, neutral information in response to Round Rock PD's inquiry.

To begin, we disagree with Haltom City's first premise. The prospect of a negative job reference itself might well dissuade a reasonable worker from making a charge of discrimination, regardless of whether, *ex post*, it provably resulted in the loss of an otherwise viable job opportunity. *See id.* "An adverse employment action in the context of a retaliation claim is not limited to conduct that constitutes ultimate employment decisions," such as those involving hiring and firing. *Douglas*, 544 S.W.3d at 494 & n.10. Rather, for prima facie purposes, the negative reference need not have "precluded a particular employment prospect," because "the fact that '[an] unlawful personnel action turned out to be inconsequential goes to the issue of damages, not liability.'" *Hillig*, 381 F.3d at 1033–34 (quoting *Hashimoto*, 118 F.3d at 676); *see L.B. Foster*, 123 F.3d at 754 ("An employer who retaliates [cannot] escape liability merely because the retaliation falls short of its intended result."). Indeed, requiring the employee to prove that he failed to secure a particular job because of the negative

12

reference, such as by an affidavit from Round Rock PD, sets the bar too high for a simple prima facie violation of the statute because, "[a]s a practical matter, it is unlikely that an employee could secure such evidence, as such an admission would subject a potential employer to Title VII claims of its own."[4] *Jute*, 420 F.3d at 179.

Moreover, Haltom City cites no authority for its second premise that a truthful reference, by definition, can *never* be retaliation. A simple hypothetical demonstrates why this premise is incorrect. Suppose a cashier took five dollars from the till in the first week of her employment but, when confronted, apologized and promised to repay the money ten times over within a year. The manager agreed. From there, the cashier went on to serve as an exemplary, loyal, and well-liked employee for the next thirty years. Suppose further that near the end of her thirty-year run, the cashier served as a witness in another employee's discrimination case. Then, the following morning, the manager fired the cashier. That afternoon, when the manager received a call asking for a job reference for the cashier, the manager angrily responded, "She stole," and hung up the phone. We believe that such a negative job reference would be a potential case of retaliation, even though it was both brief and truthful. And

---

[4]To the extent that it implies otherwise, we disagree with *Aldine Independent School District v. Massey*, No. 01-17-00688-CV, 2018 WL 3117831, at *5 (Tex. App.— Houston [1st Dist.] June 26, 2018, no pet.) (mem. op.).

13

while there is mixed authority on the question,[5] some courts have held that "a negative employment reference, even if providing only true information, can qualify as an adverse employment action because a true reference could serve to dissuade a reasonable employee from pursuing a protected activity just as much as a false one." *Mitchell v. Mercedes-Benz U.S. Int'l, Inc.*, No. 7:13-CV-01708-SGC, 2015 WL 1310721, at *7 (N.D. Ala. Mar. 24, 2015) (mem. op.) (collecting cases), *aff'd*, 637 F. App'x 535 (11th Cir. 2015).

Regardless, we need not decide whether honest job references are even *generally* safe from retaliation liability. We will assume for the moment that there is some safe harbor in Title VII and the TCHRA for negative job references so long as they are purely truthful. We will further assume arguendo that a negative job reference must result in the loss of a viable job opportunity before it may constitute adverse employment action. Even operating under those assumptions, Haltom City has not conclusively proven either that Sergeant Peters's reference was true or that it did not cause Forrest to lose out on the Round Rock PD job.

Rather, viewed in the light most favorable to Forrest, the state of the record suggests that Forrest was proceeding smoothly through Round Rock PD's hiring process until Sergeant Peters provided false information, which resulted in Forrest's removal from consideration. At his deposition, Forrest testified that he had passed

---

[5]*Knapp v. Gulf County School Board* offers a thoughtful discussion of both sides of the issue. *See* No. 5:16CV20-RH/GRJ, 2016 WL 7478979, at *2 (N.D. Fla. Dec. 29, 2016) (order).

the early stages of Round Rock PD's process and been invited to an oral interview. There, he disclosed that he had been fired for dubious reasons, which he had successfully challenged through legal action. One of Forrest's interviewers reassured Forrest and shared his own story: that despite a previous wrongful discharge, Round Rock PD had hired him, and he had been with Round Rock PD for twenty years. As Forrest recalled, the interviewer told him to relax and let Round Rock PD's higherups investigate the discharge, and "you should have a good chance."

However, Forrest offered evidence that Sergeant Peters then gave false information in response to Round Rock PD's inquiry. According to Forrest's deposition testimony, Sergeant Peters told Round Rock PD that Forrest had been investigated twice and that, as a result, he had been fired for confirmed misconduct. Sergeant Peters's testimony was to similar effect: whereas Forrest had told Round Rock PD that the allegations of misconduct had been deemed unfounded, Peters stated that Forrest's account was "not accurate." Yet it is undisputed that Forrest was investigated only once, that the allegations had twice been deemed unfounded, and that there was a settlement agreement by which Haltom City had agreed not to repeat the disparaging allegations.

Forrest also offered some evidence that this negative reference materially impacted his chances with Round Rock PD. The day after Round Rock PD spoke with Sergeant Peters, an internal memo was drafted recommending Forrest's removal from consideration. Viewing the record evidence in the light most favorable to

15

Forrest, the memo suggests that the call with Sergeant Peters left Round Rock PD with the mistaken impression that the allegations against Forrest had been confirmed and that Forrest had in fact been fired for lying to a superior. Indeed, Sergeant Peters's reference may have implied that Forrest had lied during his interview with Round Rock PD as well.

Thus, even accepting Haltom City's legal positions arguendo, Haltom City has not conclusively proven that the job reference Sergeant Peters gave was truthful or that it did not cost Forrest the Round Rock PD position.[6] Forrest's evidence gives rise to a fact issue on adverse employment action. We therefore overrule Haltom City's first issue.

## C. Causation and Pretext

In its second issue, Haltom City challenges the elements of prima facie and but-for causation. Later in its brief, Haltom City contends that it has offered legitimate, nondiscriminatory reasons for any adverse actions. And in its third issue, Haltom City contends that Forrest did not meet his responsive burden to create a fact issue as to whether Haltom City's proffered reasons were merely pretext for unlawful retaliation.

We have reviewed the entirety of the record and made our determinations:

---

[6]Separately, Haltom City also submits that there can be no adverse employment action because Haltom City PD was required to release the information under a state statute concerning employment references and under the terms of the release that Forrest signed. Neither of these contentions has any bearing on whether Haltom City PD did in fact take adverse action. Instead, these contentions would serve the purpose of providing a legitimate, nondiscriminatory reason for its actions, which is a different area of the *McDonnell Douglas* framework.

16

- Forrest created a fact issue on prima facie causation, and

- Haltom City offered one overarching nondiscriminatory reason for its actions, but

- Forrest met his responsive burden to produce evidence creating a fact issue on but-for causation and pretext.

For the sake of economy, we condense our discussion of the remaining elements. We begin with Haltom City's nonretaliatory reason for its actions. We then discuss prima facie causation, but-for causation, and pretext together, because the same evidence creates a fact issue on all three.

1. **Applicable Law**

The final element of the plaintiff's prima facie case is causation. The causation standard for a prima facie case is not onerous and can be satisfied merely by proving close timing between the protected activity and the adverse action. *Clark*, 544 S.W.3d at 782.

If the plaintiff makes a prima facie showing, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* "[I]t is relatively easy . . . for a defendant to articulate legitimate, nondiscriminatory reasons for his decision." *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 811 (5th Cir. 1991); *Beebe v. City of San Antonio ex rel. City Pub. Serv. Bd. of San Antonio*, No. 04-13-00134-CV, 2014 WL 4437648, at *3 (Tex. App.—

17

San Antonio Sept. 10, 2014, no pet.) (mem. op.). To satisfy its burden, "[t]he employer need only articulate a lawful reason, regardless of what its persuasiveness may or may not be"; the credibility of the reason comes into play later, in assessing pretext. *Joseph v. City of Dallas*, 277 F. App'x 436, 439–40 (5th Cir. 2008) (per curiam).

If the employer provides evidence of a legitimate reason for the adverse action, the employee must prove the adverse action would not have occurred but for the protected activity. *Mitchell v. Tex. Dep't of Crim. Justice*, No. 02-16-00100-CV, 2017 WL 632906, at *4 (Tex. App.—Fort Worth Feb. 16, 2017, no pet.) (mem. op.); *Herbert*, 189 S.W.3d at 377. The but-for causation standard is significantly more difficult to prove than prima facie causation. *Clark*, 544 S.W.3d at 782. In evaluating but-for causation evidence in retaliation cases, we examine all of the circumstances, including temporal proximity between the protected activity and the adverse action, knowledge of the protected activity, expression of a negative attitude toward the employee's protected activity, failure to adhere to relevant established company policies, discriminatory treatment in comparison to similarly situated employees, and evidence the employer's stated reason is false. *Id.* at 790.

The worker must also demonstrate that the employer's proffered reason was just a pretext for retaliation. *Id.* at 782. In demonstrating pretext, the plaintiff is "not limited to presenting evidence of a certain type," and his proof "may take a variety of forms." *Patterson v. McLean Credit Union*, 491 U.S. 164, 187, 109 S. Ct. 2363, 2378 (1989). "The more idiosyncratic or questionable the employer's reason, the easier it

will be to expose as a pretext, if indeed it is one." *Ross v. Pfizer, Inc.*, 375 F. App'x 450, 456 (6th Cir. 2010). Merely disputing an employer's assessment of a plaintiff's work will not necessarily support an inference of pretext. *Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir. 2001).

There is an overlap between pretext and but-for causation: an employee establishes pretext for a retaliation claim if he shows that his "protected activity was a but-for cause of the alleged adverse action by the employer." *Reed v. Cook Children's Med. Ctr., Inc.*, No. 02-13-00405-CV, 2014 WL 2462778, at *7 (Tex. App.—Fort Worth May 29, 2014, no pet.) (mem. op.); *see Toldson v. Denton Indep. Sch. Dist.*, No. 02-18-00394-CV, 2019 WL 6205245, at *10–11 (Tex. App.—Fort Worth Nov. 21, 2019, no pet.) (mem. op.) (holding that a lack of causation evidence was fatal to the plaintiff's case on pretext); *see also Herbert*, 189 S.W.3d at 375 ("Proving 'pretext for discrimination' requires the plaintiff to show both that the reason for the employer's action was false and that discrimination was the real reason for the action.").

## 2.    Analysis

We begin with Haltom City's proffered legitimate reason for providing a negative reference and the evidence that that reason was false, which pertains to both pretext and the last of *Clark*'s six causation factors, "evidence the employer's stated reason is false." 544 S.W.3d at 790.

The City has advanced what we consider to be one overarching nonretaliatory reason for its actions: Sergeant Peters gave the reference because the City needed to

19

comply with Round Rock PD's background check, pursuant to Forrest's signed authorization as well as a state statute concerning background checks. As for the authorization, Haltom City did not move for traditional summary judgment on the affirmative defense of release, did not attempt to conclusively prove it, and has not argued that defense on appeal. *See, e.g., David v. Howeth*, No. 02-20-00078-CV, 2020 WL 6165298, at *5 (Tex. App.—Fort Worth Oct. 22, 2020, pet. filed) (mem. op.). As for the statutory provision that Haltom City cited, it only authorizes a law enforcement agency that obtains a consent form to make the person's employment records available to a hiring law enforcement agency. *See* Tex. Occ. Code Ann. § 1701.451(a-1). The question in this case is not whether Sergeant Peters provided Round Rock PD with Forrest's employment records, and it is undisputed that he did not. Rather, the question is whether Sergeant Peters gave a negative reference in breach of the settlement and in retaliation, and the statute has little to do with those subjects.

The foregoing discussion should help narrow the issue at hand. To be persuasive, the City's reason would arguably need to justify not simply providing an employment reference, but providing a false, negative employment reference and doing so in contravention of a settlement agreement. According to the most Forrest-favorable view of the record, Haltom City PD told Round Rock PD that Forrest was fired for confirmed misconduct. But Haltom City PD had ample reason to know, from at least three sources, that those allegations of misconduct were unfounded:

20

(1) from its own investigator, who deemed the allegations unfounded and refused to change his findings despite pressure from Haltom City PD; (2) from the administrative law judge who also deemed the allegations unfounded; or (3) from the settlement agreement by which Haltom City agreed not to repeat the allegations. Any one of those sources would have tended to filter out the legitimate reasons that Haltom City might have had for repeating the allegations in a job reference, leaving only pretextual and retaliatory motives as a possible explanation.

Moreover, Haltom City PD could have satisfied the same professed need by adhering to the plan outlined in the settlement agreement: have its human resources department provide the files and, if any reference at all, only one that was true, neutral, and nondisparaging. Adhering to that plan would have served the same aims without violating the settlement. Because the City's professed reason does not square with its options and obligations under the settlement, this suggests pretext and causation, as is demonstrated by *Radentz v. Marion County*, 640 F.3d 754, 758–59 (7th Cir. 2011). There, Marion County's professed reason for its adverse action was that it intended to terminate the plaintiffs' contracts in order to hire professionals of a different race at lower cost and thus to save money. *Id.* But the court observed that Marion County had failed to utilize a contractual provision that would have allowed the county to achieve that goal of eliminating extra labor expenses without terminating the plaintiffs. *Id.* The Seventh Circuit held that because the county did not exercise a contractual provision that would have satisfied the same professed need

without the termination, this "cast[] doubt on whether the expense was actually the reason for the termination." *Id.* As in *Radentz*, Haltom City's professed reason does not square with its contractual realities under the settlement. *See id.* A rational jury could interpret that dissonance as some evidence of pretext and causation.

Moreover, because "the past is prologue," *Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P.*, 343 S.W.3d 112, 119 (Tex. 2011), the evidence that Haltom City PD had already retaliated against Forrest in the past also lends "color" to our view of whether Haltom City's reasons were mere pretext for retaliation. *See Cummings v. Standard Register Co.*, 265 F.3d 56, 63 (1st Cir. 2001); *see also McDonnell Douglas*, 411 U.S. at 804–05, 93 S. Ct. at 1825 (holding that the employer's other discriminatory practices may inform the pretext inquiry). "[C]ircumstantial proof of discrimination typically includes unflattering testimony about the employer's history and work practices—evidence which in other kinds of cases may well unfairly prejudice the jury against the defendant." *Kelly v. Boeing Petro. Servs., Inc.*, 61 F.3d 350, 360 (5th Cir. 1995) (quoting *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1103 (8th Cir. 1988)). "In discrimination cases, however, such background evidence may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive." *Id.*

Here, Haltom City PD had a history of giving thin reasons for apparently retaliatory acts against Forrest. When he discharged Forrest, Haltom City PD's chief of police issued a letter in which he maintained that he was firing Forrest for lying

22

about a minor detail in a traffic investigation. Yet a rational jury could question whether an employer would fire an employee for such a reason. To wit, the officer who investigated Forrest documented his interviews with officers who believed that (1) Haltom City PD could have just as easily counselled Forrest rather than fire him, (2) Forrest had nothing to gain by lying about something so trivial, and (3) the superior officer, to whom Forrest allegedly lied, "baited" Forrest into misstating the facts, guiding Forrest into "giving . . . the answer" that the superior officer wanted. Proof that the proffered reason was insufficient to motivate the termination tends to show pretext for retaliation, *Abbott v. Crown Motor Co.*, 348 F.3d 537, 544 (6th Cir. 2003), and that past retaliation is relevant for present purposes. *See Cummings*, 265 F.3d at 63.

Furthermore, in evaluating causation, the fact that the content of the disparaging job reference rehashed and referred back to the subject of the earlier suit—i.e., whether Forrest was fired for misconduct or in retaliation—may lend additional strength to this evidence of past retaliation. *See Guangyu Wang v. Nev. Sys. of Higher Educ.*, No. 3:18-cv-00075-MMD-CBC, 2018 WL 5816647, at *7 (D. Nev. Nov. 6, 2018) (order) (concluding that the plaintiff adequately established causation because the subject of the defendant's negative job reference was the plaintiff's prior EEOC conflict with the defendant).

We have reviewed the evidence that pertains to both pretext and *Clark*'s sixth causation factor, "evidence the employer's stated reason is false." 544 S.W.3d at 790.

But Forrest introduced evidence concerning some of *Clark*'s other causation factors as well.

As to the first factor, the "temporal proximity between the protected activity and the adverse action" assists Forrest's case slightly. *See id.* The timeline was as follows: Forrest was hired on August 3, 2015; after he complained about religious discrimination, the investigation into his alleged misconduct began on June 30, 2016; he was fired on August 1, 2016; Forrest filed a formal charge of discrimination on March 24, 2017 (the protected activity); that charge was settled on June 12, 2017; and Haltom City provided the negative reference on September 6, 2017 (the retaliation). According to the evidence, Forrest's most recent protected activity was in late March, and the alleged retaliatory action occurred five months later, in early September. "[A] time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes." *Evans*, 246 F.3d at 354 (internal quotation omitted).[7] While somewhat longer than the four months that the Fifth Circuit has found sufficient to show prima facie causation on its own, a rational jury could nonetheless believe that the timing adds at least something to Forrest's case on causation and pretext.

As to the second factor, there was evidence that Haltom City PD and Sergeant Peters had "knowledge of the protected activity." *See Clark*, 544 S.W.3d at 790. In

---

[7]*But cf. Besser v. Tex. Gen. Land Office*, No. 18-50291, 2020 WL 6476707, at *5 (5th Cir. Nov. 3, 2020) (per curiam).

response to Forrest's protected activity—i.e., his earlier TCHRA claim—Haltom City signed a settlement agreement that specifically addressed and released his claim. Sergeant Peters testified that he was aware of the settlement, which in turn suggests knowledge of the protected activity it concerned.

As to the fourth factor, while there is no evidence of Haltom City PD's "failure to adhere to relevant established company policies," there is more compelling evidence in the same vein: that Haltom City failed to adhere to a binding settlement agreement, as discussed above. *See id.*

Taken together, this evidence is sufficient to give rise to a fact issue on prima facie causation, but-for causation, and pretext. We therefore overrule Haltom City's second and third issues.

## IV. IMMUNITY FOR BREACH OF THE SETTLEMENT

In its fourth issue, Haltom City argues that it should be categorically immune to Forrest's claim for breach of the settlement agreement. Haltom City argues that the settlement is not a contract for goods or services for which immunity has been waived, and therefore immunity bars Forrest's claim for breach of the settlement. *See* Tex. Loc. Gov't Code Ann. §§ 271.151(2)(A), .152.

Forrest responds that his breach claim is governed (and allowed) by the rule of *Texas A & M University–Kingsville v. Lawson.* 87 S.W.3d 518, 521–22 (Tex. 2002) (plurality op.); *see Hughes v. Tom Green Cty.*, 573 S.W.3d 212, 221 (Tex. 2019) (confirming that *Lawson* is controlling precedent). We agree with Forrest.

25

In *Lawson*, the plaintiff agreed to settle his whistleblower claim against his former employer, a state university, in exchange for $62,000 and an agreement that the university would respond to employment inquiries about him in a certain way: requests for references would be referred to the head of the personnel department, who would give only neutral information about his title and salary. 87 S.W.3d at 518–19. The plaintiff later sued, alleging that the university had breached the settlement by mishandling an employment inquiry. *Id.* at 519. The university argued it should be immune from the suit because the plaintiff's claim was one for breach of contract for which immunity had not been waived. *Id.* at 519–20.

The *Lawson* court held that if a government entity agrees to settle a lawsuit from which it is not immune, it cannot claim immunity from a subsequent suit for breach of the settlement agreement. *Id.* at 521. "[W]hen a governmental entity is exposed to suit because of a waiver of immunity, it cannot nullify that waiver by settling the claim with an agreement on which it cannot be sued." *Id.* "Once the Legislature has decided to waive immunity for a class of claims, the inclusion of settlements within the waiver is consistent with that decision." *Id.* at 522. "The State should not regain waived immunity by settling a case." *Id.*

In this case, Forrest claimed a violation of the TCHRA, he settled that claim, and he has now sued for breach of the settlement. Sovereign immunity is waived for TCHRA claims like Forrest's. *See Clark*, 544 S.W.3d at 770. Therefore, immunity does not bar Forrest's claim for breach of the resulting settlement.

26

We overrule Haltom City's fourth and final issue.

## V.    CONCLUSION

We affirm the trial court's denial of the plea to the jurisdiction and motion for summary judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered:  February 25, 2021